Aaron L. **WARD**, et al., Appellants,

v.

**DALLAS TEXAS NATIONAL TITLE COMPANY**, et al., Appellees.

No. 05–86–00044–CV.

Court of Appeals of Texas, Dallas.

July 28, 1987.

Rehearing Denied Sept. 14, 1987.

Gary D. Jackson, Gloria A. Jackson, Dallas, for appellants.

Bill Boyd, McKinney, William S. Lee, Claude R. Wilson, Jr., Vincent W. Perini, Judy M. Spalding, F. Ward Steinbach, F. Scott Steinbach, Dallas, for appellees.

Before WHITHAM, HECHT[1] and LAGARDE[2], JJ.

HECHT, Justice.

This is another in the host of lawsuits spawned by the notoriously ill-fortuned condominium development along Interstate 30 in the Lake Ray Hubbard area. The trial court rendered summary judgment in favor of several of the defendants, and plaintiffs appealed.[3] The subsistence of material fact issues requires that the summary judgment be reversed and the case remanded for further proceedings.

J.A.D.A., a partnership owned 60% by James E. Ward and Aaron L. Ward, and 40% by Danny Ray Todd and Alan Wilson, contracted to buy a 4.896–acre tract for just over $245,000. Appellants[4] allege that as the contractual closing date for purchasing the property neared, Todd falsely represented that no buyers or lenders could be found, and that it would be more prudent to forfeit the earnest money they had already paid than to deposit additional earnest money to extend the closing and run the risk of forfeiting it too. The Wards say they followed Todd's advice.

The Wards allege that unbeknownst to them Todd and Wilson, purporting to act for J.A.D.A., closed the purchase of the property and resold it at a profit. Appellants also allege that as part of a scheme to defraud Empire Savings and Loan Associa-

---

1. The Honorable Nathan L. Hecht, Justice, who succeeded the Honorable Lawrence B. Mitchell, Justice, at the expiration of his term between submission and decision of this case, has reviewed the briefs and record.

2. The Honorable Sue L. Lagarde, Justice, who succeeded the Honorable R.T. Scales, Justice, at the expiration of his term between submission and decision of this case, has reviewed the briefs and record and participated in the decision of the case.

3. The trial court also rendered default judgment against several other defendants, who are not parties to this appeal.

4. Appellants, plaintiffs in the trial court, are the Wards and J.A.D.A.

tion and the public, Todd and Wilson conspired with appellees and others to "flip" the property through a series of conveyances to sell it ultimately for "a fictitious and exaggerated value of more than $1.7 million." In fact, immediately after closing on the purchase of the property J.A.D.A. sold it to Mike Faldmo for about $535,000, who sold it to Clifford Ray Sinclair, who sold it half to ADWN, Inc., and half to JMSW, Inc., for a total price of $1,706,000, all in a single day. Thus, the same property that J.A.D.A. purchased for $245,000 and sold for $535,000 sold later the same day for more than $1.7 million. Sinclair received two promissory notes secured by deeds of trust to Empire Savings. The gist of appellants' numerous claims [5] is simply that appellees [6] and others [7] conspired to deprive them of their share of the property's value. An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose by unlawful means. The essential elements are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful overt acts; and 5) damages as the proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). To obtain summary judgment on a conspiracy claim a defendant must disprove at least one element of the claim as a matter of law. *Futerfas v. Park Towers*, 707 S.W.2d 149, 156 (Tex.App.—Dallas 1986, writ ref'd n.r. e.).

Appellees have not met their burden. The summary judgment record raises a question of fact as to whether a conspiracy existed and whether each appellee was a member. Appellees' self-serving denials are not readily controvertible and thus not proper summary judgment evidence. *See American Petrofina v. Crump Business Forms*, 597 S.W.2d 467, 471 (Tex.App.—Dallas 1980, writ ref. n.r.e.). Furthermore, Faldmo and Sinclair have asserted their constitutional privilege against self-incrimination and refused to answer questions in depositions or interrogatories. Their silence also raises a material question of fact as to the existence and constituency of the alleged conspiracy. *See Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *see also* TEX.R.EVID. 513.

As for the fifth element of a conspiracy, appellants claim as damages "the difference between the price paid to LINJAC and the sale price to developers of the property on 22 April 1983" and "the difference between the price to LINJAC and the price obtained from FALDMO, Trustee." Both these claims are for part of the profits of the allegedly fraudulent scheme. A person is not entitled to recover from his partner any share of the profits of the partner's fraudulent scheme when to do so would in effect allow the person to benefit from the fraud. *See generally* A. Bromberg, CRANE & BROMBERG ON PARTNERSHIP § 21, at 98–103 (1968). Appellants are therefore not entitled to recover any part of the profits of what they themselves claim was a fraudulent scheme.[8]

However, appellants also claim damages for loss of the value of the property and the opportunity to develop and use it.[9] By

5. In 39 legal pages and 110 numbered paragraphs, the Wards' seventh amended petition alleges fraud, breach of fiduciary duty and conspiracy, and seeks money damages, declaratory relief, and an accounting and dissolution of the partnership.

6. Appellees are Dallas Texas National Title Company, Clifford Ray Sinclair, Mike Faldmo, Dallas Title Company—Rowlett, Jane Nix, Lola Greene and Robert C. Lea.

7. Non-appellee defendants at this stage include Danny Ray Todd, Alan D. Wilson, ADWN, Inc., JMSW, Inc., Elizabeth Susan "Betty" Salamone and Mike Crosby.

8. Sophistically, the dissent states: "Surely, we have not reached the point where a person may recover damages for being denied the right to defraud." Needless to say, we agree with the dissent that we have not reached that point. Equally surely, however, we have not reached the point where valid claims are denied simply because invalid claims are joined in the same pleadings.

9. The dissent concludes as a matter of law that the Wards have not suffered legally recoverable damages because they "must rely upon their own participation in an illegal transaction in order to establish their case." Were the dissent's premise correct, we would agree with the

this claim appellants do not seek to benefit from the alleged fraud but only to be compensated for their loss.[10] Although appellants can have no moiety in any fraud-forged fund, they may have the right to recover damages for any real loss of value of the property. The summary judgment record raises a fact question on this issue of damages.

Appellants also seek a declaration that J.A.D.A.'s deed to Faldmo is void. The summary judgment record raises a material fact question as to whether Wilson defrauded appellants, and whether Faldmo participated in the fraud.

Given the nature of the appellants' claims, appellees' reliance upon testimony of interested witnesses not readily controvertible, and two alleged conspirators' assertion of their Fifth Amendment rights, we conclude that material fact issues exist precluding summary judgment. We therefore reverse the summary judgment and remand [11] the case for further proceedings not inconsistent with this opinion.[12]

WHITHAM, J., dissents.

WHITHAM, Justice, dissenting.

I respectfully dissent. Appellants, Aaron L. Ward and James E. Ward, were the majority interest partners in appellant, J.A.D.A. Alan D. Wilson and Danny Ray Todd were the minority interest partners in J.A.D.A. The Wards and J.A.D.A. appeal from a summary judgment in favor of appellees, Dallas Texas National Title Company, Clifford Ray Sinclair, Mike Faldmo, Dallas Title Company—Rowlett, Jane Nix, Lola Greene and Robert C. Lea. Since there have been many parties to this litigation, I refer to appellees as the "Interstate 30 parties." For the purposes of this opinion, I assume, but do not decide, that all of the Wards' assertions of wrongful conduct of any nature against the Interstate 30 parties are true. However, even assuming the truth of the assertions, I would affirm the trial court's judgment for the reasons expressed below.

In order to focus on the Wards' contentions which bear on the disposition I would make of this appeal, I quote the Wards' brief:

[The Wards] alleged in the alternative that the minority partners, Todd and Wilson, joined the ongoing conspiracy of the [Interstate 30 parties and others] to falsely inflate the value of land for purposes of obtaining loans from Empire

conclusion. However, the Wards need not show that they were denied participation in an illegal scheme in order to recover damages. They may recover damages, as pleaded, by proving that Todd and Wilson sold or conspired to sell the property without giving the Wards' their share of any legal profit.

10. The dissent concludes "that the Wards complain of nothing other than that a conspiracy by the Interstate 30 parties denied the Wards of an opportunity to participate in a scheme to defraud Empire Savings and Loan of the amount of $1,706,158 by inflating the value of the Wards' land." Although as we have noted the Wards do make this invalid claim, it is not their only claim. The dissent appears to view "the Wards' short-hand rendition" of their complaints in their brief as superseding the pleadings. The dissent's disregard of appellants' pleadings and strait reading of one-sentence summaries in their brief belies its acknowledgment that we must indulge all reasonable inferences in favor of the non-movant Wards.

11. Despite appellants' insistence that the trial court's judgment be reversed, the dissent assumes that because the Wards pray in their brief for a remand "with instructions" but not

for a remand for new trial, "by the time the appellant [sic] got to the end of the appellant's brief, the appellant was convinced that the trial court correctly disposed of the case and agreed that we should affirm...." The dissent cites no authority for this rather remarkable assumption which is contrary to the spirit if not the letter of our rules. Tex.R.App.P. 83; *see Inpetco, Inc. v. Texas American Bank,* 729 S.W.2d 300 (Tex. 1987). Appellants' general prayer is sufficient for a remand for further proceedings. *See Sherrod v. Bailey,* 580 S.W.2d 24, 29 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

12. We sustain appellants' second, fourth, fifth and sixth points of error. In their third point of error appellants complain that the trial court should not have considered affidavits offered by appellees in support of their motions. In their first point of error appellants' complain that the trial court erroneously refused to hear certain discovery matters prior to hearing the motions for summary judgment. The conduct of discovery is within the sound discretion of the trial court. Because of our holding we need not reach appellants' first and third points of error.

Savings and Loan and to divide among themselves the funds obtained by using partnership property in fraud of the Wards.

As I read the record, the Wards' description of their "alternative" allegation is a misnomer. What the Wards call "alternative" is but a short-hand rendition of their conspiracy cause of action. I reach this conclusion because the Wards later tell us in their brief that:

> [T]he Wards sued to recover the loss that resulted from the acts of their partners and [the Interstate 30 parties and others] who participated with them in the fraud and who benefited from the fraud and from the overall conspiracy to seize the business opportunity of J.A.D.A. and/or to inflate the value of the land for the purpose of obtaining loans from Empire.

Consequently, I read the Wards' short-hand rendition to complain that the Interstate 30 parties conspired to defraud the Wards by denying the Wards an opportunity to participate in a scheme to defraud Empire Savings and Loan. Thus the participants, including the Wards, were to defraud Empire Savings and Loan by inflating the value of the Wards' land. I remind the reader of the last-quoted portion of the Wards' brief in which they state that the Wards sued to recover for loss resulting from being denied "the business opportunity of J.A.D.A. and/or to inflate the value of the land for the purpose of obtaining loans from Empire." Hence, the Wards insist that they were entitled to be a party to defrauding Empire Savings and Loan. To my mind, no damages can be recovered for such a deprivation of the opportunity to defraud another.

In essence, the Wards seek to become a party to the illegal transaction—falsely inflating the value of their own land in order to obtain money from Empire Savings and Loan. A party who must rely upon his own participation in an illegal transaction in order to establish his case cannot recover. *See Wiggins v. Bisso*, 19 Tex. 219, 222, 47 S.W. 637, 638 (1898); *Carnes Corp. v. Thermal Supply, Inc.*, 359 S.W.2d 99, 100–01 (Tex.Civ.App.—Houston 1962, no writ). Since the Wards must rely upon their own participation in an illegal transaction in order to establish their case, the Wards cannot recover. Hence, the Wards have not suffered damages for which the law allows recovery. In my view, the Wards' inability as a matter of law to recover damages becomes critical to the disposition of this appeal.

An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Massey*, 652 S.W.2d at 934. I focus on the element of damages. A defendant-movant has the negative burden of proving that the plaintiff suffered no damages. *Futerfas v. Park Towers*, 707 S.W.2d 149, 156 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). The standards for reviewing a motion for summary judgment are well established. As mandated by the Supreme Court of Texas they are:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
> 3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). Taking the evidence favorable to the non-movant Wards as true and indulging every reasonable inference in favor of the Wards and resolving any doubts in favor of the Wards, I conclude that the Wards complain of nothing other than that a conspiracy by the Interstate 30 parties denied the Wards of an opportunity to participate in a scheme to defraud Empire Savings and Loan of the amount of $1,706,158 by inflating the value

of the Wards' land. I cannot agree that one may recover damages resulting from exclusion from an alleged conspiracy "to flip the property through a series of conveyances to sell it ultimately for a 'fictitious and exaggerated value of more than $1.7 million'" to use the majority's words. Surely, we have not reached the point where a person may recover damages for being denied the right to defraud. Therefore, in my view, the issue centers on whether the fifth essential element of a cause of action for civil conspiracy—damages as the proximate result—stands successfully negated. On this record, it is established that the Wards suffered no damages as a matter of law. To my mind, therefore, the damage element stands negated by operation of law. Since the fifth essential element of a cause of action for civil conspiracy stands negated as a matter of law, it follows that the trial court properly granted summary judgment against the Wards.

Another reason exists, however, why we should affirm the trial court's judgment. In this court the Wards do not seek remand for trial on the merits. In the prayer for relief in a brief in the court of appeals, the nature of the relief sought should be clearly stated. TEX.R.APP.P. 74(g). I quote the Wards' prayer for relief in their brief in this court:

> WHEREFORE, Appellants respectfully request that the summary judgment of the trial court be reversed and that the cause be remanded with instructions to the trial court to overrule the Fifth Amendment objections of Defendants Faldmo and Sinclair to Plaintiff's Request for Admissions and to deem the requested facts admitted, to set for hearing forthwith Plaintiffs' motions, requests and special exceptions filed between 23 August 1985 and 12 November 1985, and to order Appellees to pay reasonable attorney fees in the sum of $10,-000.00 to Appellants' attorneys as a sanction for abuse of the discovery process and to pay $15,000.00 reasonable attorneys fees to Appellants' attorneys for intentionally leading the Court below into error which necessitated this appeal. Appellants further request that costs of

this appeal be assessed against Appellees and that Appellants have any and all such other relief to which they are entitled.

Nowhere do the Wards pray that we remand for a trial on the merits. All that the Wards pray for is a remand with instructions to take certain actions. None of the actions sought of the trial court is a trial on the merits. Where the appellant does not pray for a remand for trial on the merits in an appeal from a take-nothing summary judgment, I would assume that, by the time the appellant got to the end of the appellant's brief, the appellant was convinced that the trial court correctly disposed of the case and agreed that we should affirm the trial court's take-nothing summary judgment against the appellant. Consequently, since the Wards do not pray for a remand for trial on the merits in this appeal from a take-nothing summary judgment, I would affirm the trial court's take-nothing summary judgment against the Wards. Indeed, the lack of merit in the Wards' lawsuit is obvious when we read in their prayer in this court that all the money damages they now want is $10,000.00 attorneys' fees as a sanction for abuse of the discovery process and $15,000.00 attorneys' fees as a sanction for intentionally leading the trial court into error necessitating this appeal.

For all of the above reasons, I would affirm the trial court's judgment.