**AFFIRM; Opinion Filed August 3, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00908-CV**

**ELIEZER ROMOND LURKS, Appellant**
**V.**
**DESIGNER DRAPERIES AND FLOORS, INC. D/B/A DDF COMMERCIAL**
**FLOORING, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-06150**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Schenck

Eliezer Romond Lurks appeals the trial court's grant of summary judgment in favor of appellee Designer Draperies and Floors, Inc. ("DDF"). In five of six issues, Lurks argues the trial court erred in granting DDF summary judgment because the summary judgment record contains genuine issues of material fact. In his sixth issue, Lurks argues the trial court erred in overruling two evidentiary objections he made to DDF's summary-judgment evidence. We affirm. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

In the evening of June 11, 2019, Lurks was driving a truck, which was towing a sedan driven by his father, Airic Lurks, on the two-lane frontage road of Interstate 20. The vehicles became detached. Lurks attempted to reattach the vehicles while they were both stopped in the right lane of the frontage road. At about 9:15 p.m., while Lurks was standing between the two stopped vehicles, a third vehicle driven by Eric Heitzmann rear-ended the sedan, pinning Lurks between the truck and the sedan and causing serious injuries to both of his legs.

Several officers with the Lancaster Police Department were dispatched to the scene of the accident. One of officers smelled alcohol on Heitzmann's breath and, after ascertaining Heitzmann did not need medical assistance, conducted field sobriety tests on him, which he did not pass. Heitzmann was arrested, charged with intoxication assault with vehicle causing serious bodily injury, and transported to a medical facility where his blood was drawn. When subsequently tested for the presence of alcohol, Heitzmann's blood–alcohol content was measured at 0.126.

On April 28, 2020, Lurks filed suit against DDF and Heitzmann Enterprises, Inc. ("HEI"),[1] alleging that on the day of the accident, Heitzmann—"individually and/or as owner, officer director and/or manager of [HEI]"—was a vice principal of DDF. Lurks' petition further alleged that Heitzmann—while working and performing his duties, either individually or acting for HEI, as vice principal of

---

[1] Because Lurks later non-suited HEI, that entity is not a party to this appeal.

DDF—consumed alcohol in quantities sufficient to render him legally intoxicated, drove while extremely intoxicated, crashed into the stopped sedan Lurks had been towing, and thus caused Lurks' serious injuries. DDF moved for traditional and no-evidence summary judgment. Lurks responded and objected to evidence DDF submitted in support of its motion. DDF filed a reply, and Lurks filed a sur-reply. The trial court heard the motion by submission, granted summary judgment in favor DDF, and ruled on evidentiary objections made by Lurks. Lurks filed a motion for the court to reconsider its summary judgment and requested an oral hearing. The trial court granted Lurks' motion to non-suit without prejudice his claims against HEI. After conducting a hearing on Lurks' motion to reconsider, a senior judge sitting by assignment denied the motion. This appeal followed.

## DISCUSSION

We review a trial court's granting of summary judgment de novo. *Arana v. Figueroa*, 559 S.W.3d 623, 627 (Tex. App.—Dallas 2018, no pet.) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). When, as here, we review both no-evidence and traditional summary judgment motions, we first review the trial court's summary judgment under the standards of review for no-evidence summary judgment, potentially pretermitting the need for further analysis. *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). No-evidence summary judgments are reviewed under the same legal sufficiency standard as directed verdicts. *Id.* The nonmovant must present evidence that raises

a genuine issue of material fact on the challenged elements of the claim. TEX. R. CIV. P. 166a(i); *see id.* (citing *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)). A no-evidence challenge will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* (citing *Merriman*, 407 S.W.3d at 248).

Lurks claims that DDF may be held liable for Heitzmann's actions because of Heitzmann's alleged status, either as an individual or acting on behalf of HEI, as a vice principal of DDF.[2] In other words, Lurks urges that DDF steps into the shoes of Heitzmann and is, therefore, directly liable for Lurks' injuries. Lurks relies on *GTE Southwest, Inc. v. Bruce*, in which the supreme court held that when actions are taken by a vice principal of a corporation, those acts may be deemed to be the acts of the corporation itself. *See* 998 S.W.2d 605, 618 (Tex. 1999).

In *Bruce*, employees of a corporation brought claims of intentional infliction of emotional distress against the corporation for the acts of a supervisor, complaining about his "daily use of profanity, short temper, and his abusive and vulgar dictatorial

---

[2] In his first issue, Lurks argues he adduced sufficient evidence to raise a genuine issue of material fact as to Heitzmann's status as a vice principal of DDF. In his second issue, Lurks urges, assuming Heitzmann was a vice principal of DDF, his drinking during the evening of June 11, 2019, before driving and injuring Lurks, was sufficiently in DDF's workplace to create a genuine issue of material fact as to DDF's direct, vice-principal liability.

manner," as well as harassment, intimidating, and humiliation to create a workplace that was "a den of terror for the employees." *See id.* at 608–09, 617. Thus, in *Bruce*, the vice principal's tortious acts were committed in the workplace and as part of his role as vice principal. *See id.* at 618 ("regardless of whether Shields acted within the scope of his employment, his status as a vice-principal of the corporation is sufficient to impute liability to GTE with regard to his actions taken in the workplace."). Moreover, in order for a vice principal's tortious acts to be attributed to a corporation, they must be referable to the corporation's business. *See Apple Tree Café Touring, Inc. v. Levantino*, No. 05-16-01380-CV, 2017 WL 3304641, at *9 (Tex. App.—Dallas Aug. 3, 2017, pet. denied) (mem. op.) (citing *Rhodes, Inc. v. Duncan*, 623 S.W.2d 741, 744 (Tex. App.—Houston [1st Dist.] 1981, no writ). In contrast, the supreme court has held a corporation is not liable for exemplary damages when the vice principal's misconduct occurs while he was acting in a personal capacity unrelated to his authority as a corporate vice principal. *See Bennett v. Reynolds*, 315 S.W.3d 867, 884–85 (Tex. 2010).

Lurks argues the following evidence was sufficient to raise a genuine issue of fact as to whether Heitzmann's alleged misconduct took place in the workplace, and at this stage of our review, we must consider the evidence in the light most favorable to him, credit evidence favorable to him if reasonable jurors could, and disregard

evidence contrary to him unless reasonable jurors could not.[3]  *See Rico v. L-3 Comm'ns Corp.*, 420 S.W.3d 431 (Tex. App.—Dallas 2014, no pet.).  The police officer who administered field sobriety tests to Heitzmann testified in a deposition that Heitzmann admitted he had been drinking alcohol "right before leaving work." The record also contains Heitzmann's deposition testimony, in which he stated that any time he was in the building used by DDF as its offices, he was conducting business on behalf of another company—HEI, though that company often was hired by DDF as an independent contractor to function as a project manager for DDF, and Lurks alleged in his petition HEI was vice principal for DDF.  Heitzman also asserted his Fifth Amendment privilege against self-incrimination in response to several questions related to whether he was drinking alcohol at DDF's workplace.[4]  A jury

---

[3] We assume, without deciding, Lurks adduced sufficient evidence to create a genuine issue of material fact as to whether Heitzmann was a vice principal of DDF and now address his second issue related to DDF's liability for Heitzmann's alleged conduct.

[4] Lurks asserted his Fifth Amendment privilege in response to the following and other questions during his deposition:

- Whether he was not consuming any alcoholic beverages the evening or afternoon of June 11, 2019, at DDF's office address;
- Whether he had been drinking at DDF's offices;
- Whether he was consuming alcohol in the office space owned by HEI between 4:00 p.m. and 9:00 p.m. on June 11, 2019;
- Whether he was not consuming any alcohol on "the premises of DDF" between 4:00 p.m. and 9:00 p.m. on June 11, 2019;
- Whether it was possible he was drinking alcohol in either of HEI's or DDF's offices;
- Whether, when he was consuming alcohol between 4:00 p.m. and 9:00 p.m. on June 11, 2019, he knew at some point he would have to drive home to Red Oak, Texas;
- Whether he knew before he started drinking between 4:00 p.m. and 9:00 p.m. on June 11, 2019, that he needed to avoid becoming intoxicated because he eventually had to drive home to Red Oak;
- With whom he was drinking alcoholic beverages on June 11, 2019;
- What anyone who was with him was drinking or who they were employed by;

would be allowed to draw negative inferences regarding Heitzmann's assertion of his Fifth Amendment privilege, and thus, we therefore assume, without deciding, the summary-judgment evidence raises a genuine issue of fact as to whether Heitzmann was consuming alcoholic beverages at DDF's workplace, that he was drinking with employees of DDF, and, perhaps, that someone encouraged him to drive.[5]

What is missing from the foregoing evidence and potentially available inferences, however, is more than a mere scintilla of evidence that Heitzmann's drinking or decision to drive while intoxicated was referable to DDF's business. *See Levantino*, 2017 WL 3304641, at \*9. Without this evidence, we cannot conclude Heitzmann's alleged tortious actions may be attributed to DDF. *See id.*

Lurks argues that another case from the Texas Supreme Court and this Court stands for the proposition that a corporation is liable for a vice principal's misconduct in the workplace, even for "non-job-related intentional torts." In *B.C. v. Steak N Shake Operations, Inc.*, an employee sued her corporate employer and her supervisor for the latter's sexual assault of her in an employee restroom during a break from her shift. *See* 512 S.W.3d 276 (Tex. 2017). In that opinion, however,

---

- Whether anyone encouraged him to get behind the wheel and drive on the evening of June 11, 2019;
- Whether he consumed the alcohol after he left the premises of his office; and
- Whether he consumed the alcohol after he left the area where DDF's building is.

[5] In his third issue, Lurks argues negative inferences based on Heitzmann's invocation of his rights under the Fifth Amendment create genuine issues of material fact as to whether Heitzmann was drinking in DDF's workplace. We assume, without deciding, he is correct that negative inferences may raise a material question of fact sufficient to withstand a no-evidence motion for summary judgment. *See Ward v. Dallas Tex. Nat'l Title Co.*, 735 S.W.2d 919, 922 (Tex. App.—Dallas 1987, writ ref'd n.r.e.).

the supreme court expressly limited its analysis to whether the trial court and this Court correctly concluded her common-law claims were preempted by the Texas Commission on Human Rights Act. *See id.* at 285.[6] On remand, this Court concluded the record contained more than a mere scintilla of evidence that the supervisor was a vice principal of the corporation, but we did not address whether his actions were referable to the corporation's business, presumably because the alleged tortious act was that, "***while managing the restaurant***, according to B.C., he assaulted her in the employee restroom." *See* No. 05-14-00649-CV, 2020 WL 4435305, at *7 (Tex. App.—Dallas Aug. 3, 2020, pet. denied) (emphasis added). Thus, we conclude our opinion in *B.C.* is distinguishable from the instant case, which lacks record evidence that Heitzmann's alleged conduct was referable to DDF's business.[7]

We overrule Lurks' second issue.[8]

---

[6] Indeed, when the supreme court again considered this appeal, it did so to determine whether this Court properly considered a late-filed response and attached evidence in response to the corporation's no-evidence summary-judgment motion, the court "express[ed] no opinion on whether that evidence [gave] rise to any genuine issues of material fact that withstand summary judgment." *See* 598 S.W.3d 256, 262 n.31 (Tex. 2020) (per curiam).

[7] Similarly, we distinguish *20801, Inc. v. Parker*, in which the supreme court held a manager of a bar was a vice principal and would be liable for overserving a patron if the plaintiff produced evidence of over-service or encouragement of over-service on the part of the manager, because such conduct would be referable to the business of a bar. *See* 249 S.W.3d 392, 399–400 (Tex. 2008).

[8] As noted, in his first issue, Lurks argues he adduced sufficient evidence to raise a genuine issue of material fact as to Heitzmann's status as a vice principal of DDF. We conclude we need not address that issue because Lurks failed to adduce sufficient evidence to raise a genuine issue of material fact as to whether Heitzmann's tortious conduct was referable to DDF's business. Similarly, as urged by Lurks, both of the evidentiary objections that he argues in his sixth issue relate to whether he established Heitzmann was a vice principal of DDF at the time of the accident. Even if we assume, without deciding, the trial court

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

210908F.P05

---

erred in overruling Lurks' objections, those errors would not affect our conclusion regarding Lurks' second issue. *See* TEX. R. APP. P. 47.1.

In his fourth issue, Lurks argues Heitzmann was negligent and negligent per se, arguing the evidence established, or at least created a genuine issue of material fact that, Heitzmann decided while at DDF's workplace to drive home severely intoxicated. In his fifth issue, Lurks urges Heitzmann's conduct in DDF's workplace established, or at least created a genuine issue of material fact that, Heitzmann was grossly negligent. Even assuming, without deciding, the record contains sufficient summary-judgment evidence such a decision made at DDF's workplace or that his conduct was grossly negligent, none of the evidence creates a genuine issue of fact as to whether his alleged decision or conduct was referable to DDF's business. Thus, consistent with our analysis of Lurks' second issue, we overrule his fourth and fifth issues.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ELIEZER ROMOND LURKS,
Appellant

No. 05-21-00908-CV     V.

DESIGNER DRAPERIES AND
FLOORS, INC. INCLUDING DBA
DDF COMMERCIAL FLOORING,
Appellee

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-06150.
Opinion delivered by Justice
Schenck. Justices Osborne and Smith
participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellee DESIGNER DRAPERIES AND FLOORS,
INC. INCLUDING DBA DDF COMMERCIAL FLOORING recover its costs of
this appeal from appellant ELIEZER ROMOND LURKS.

Judgment entered this 3rd day of August 2022.